| | |
|---|---|
| **HENRY CHESTER THOMAS** | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 16-830-RLB[1]** |
| **COMMISSIONER OF SOCIAL SECURITY, ET AL.** | |

---

### RULING ON PLAINTIFF'S SOCIAL SECURITY APPEAL

---

Henry Chester Thomas ("Plaintiff") seeks judicial review of a final decision of the

Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. §

405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security

Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1-6), the Court has

properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The

Appeals Council's decision, or the decision of the administrative law judge if the request for

review is denied, is binding unless you… file an action in Federal district court…"). For the

reasons given below, the Court **ORDERS** that the decision of the Commissioner is **AFFIRMED**

and Plaintiff's appeal is **DISMISSED with prejudice**.

### I. PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits (Tr. 197-203) and

supplemental security income (Tr. 204-209) on May 9, 2012 and May 21, 2012, respectively,

alleging that he became disabled on March 1, 2012 because of a disabling condition, namely

---

[1] Because both parties consented to proceed before a United States Magistrate Judge (R. Doc. 6), the case was transferred to this Court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c)(1).

unstable angina, coronary disease, bradycardia, and a congenital disease (Tr. 197-209, 243).

Plaintiff's application was initially denied by an Administrative Law Judge ("ALJ"), who first

held an administrative hearing (Tr. 60-73) before issuing an unfavorable decision on July 16,

2013. (Tr. 94-110). Plaintiff's first request for review of the ALJ's decision (Tr. 144-145) was

granted by the Appeals Council on September 24, 2014. (Tr. 111-113). A second hearing was

held on April 20, 2015. (Tr. 38-59). A second unfavorable opinion was issued on July 1, 2015.

(Tr. 10-37). Plaintiff's September 2, 2015 request for review of the second decision was denied

by the Appeals Council on October 17, 2015. (Tr. 2-6). The ALJ's decision rested as the

Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.

*See* 20 C.F.R. § 404.981.

## II.     STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether

there is substantial evidence to support the findings of the Commissioner and whether the correct

legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401

(1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019,

1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It

means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*,

305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor

Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence

"must do more than create a suspicion of the existence of the fact to be established, but no

substantial evidence will be found only where there is a conspicuous absence of credible choices

or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)

(quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("In applying the substantial evidence standard, we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's."); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.    ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must

prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c).  At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments).  Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work.  20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work.  20 C.F.R § 404.1520(g)(1).  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1.      Plaintiff had met the insured status requirements of the Social Security Act through December 31, 2017.

2.      Plaintiff had not engaged in substantial gainful activity since March 1, 2012.

3.      Plaintiff suffered from the following severe impairments: status post CABG with stenting and stable angina; major depressive disorder; substance abuse.

4.      Plaintiff did not meet or medically equal any listed impairment.

5.      Plaintiff retained the residual functional capacity to perform light work, except he would never be able to interact with the general public, coworkers, and supervisors, and he may perform only low-stress work (no production-based, quota drive work activity).

6.      Plaintiff was unable to perform any past relevant work.

7.    Plaintiff was a younger individual on the alleged disability onset date.

8.    Plaintiff has at least a high school education and is able to communicate in English.

9.    Plaintiff's job skills do not transfer to other occupations within the residual functional capacity outlined by the ALJ.

10.   There are no jobs that exist in significant numbers in the national economy that Plaintiff can perform considering his age, education, work experience, and residual functional capacity.

11.   If Plaintiff stopped the substance abuse, the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities such that he would continue to suffer from severe impairments.

12.   If Plaintiff stopped the substance abuse, he would not have an impairment or combination of impairments that meets or medically equals a listed impairment.

13.   If Plaintiff stopped the substance abuse, he would have the residual functional capacity to perform light work, except that he could occasionally interact with the general public, coworkers, and supervisors, and the work must be low stress (i.e., not subject to production based, quota-driven work activity.

14.   If the Plaintiff stopped the substance abuse, he would continue to be unable to perform past relevant work.

15.   Transferability of job skills is not relevant because Plaintiff is not disabled whether or not he has transferable job skills.

16.   If Plaintiff stopped the substance abuse, there would be a significant number of jobs in the national economy that he could perform.

17.   The substance abuse disorder is a contributing factor material to the determination of disability because he would not be disabled if he stopped the substance abuse, and accordingly, Plaintiff was not disabled at any point from the alleged onset date through the date of the ALJ's decision.

(Tr. 16-31).

## IV.   DISCUSSION

Plaintiff first argues that substantial evidence does not support the ALJ's finding that

Plaintiff's substance abuse was material to the determination of his disability. (R. Doc. 9 at 4). In

support of this contention, Plaintiff suggests that substantial evidence does not support a finding that Plaintiff's substance abuse is severe or material. (R. Doc. 9 at 6-7). Plaintiff also argues that substantial evidence does not support the ALJ's finding that Plaintiff has a medically determinable substance abuse disorder. (R. Doc. 9 at 7). The Commissioner responds that substantial evidence supports the ALJ's finding of the existence of substance abuse, and that the ALJ followed the proper processes in analyzing the materiality of Plaintiff's substance abuse. (R. Doc. 11 at 6-10).

Plaintiff's second argument is that he was not properly afforded the opportunity to question the medical expert at the administrative hearing. (R. Doc. 9 at 10-11). The Plaintiff suggests that he was not properly informed of his right to question the expert, especially given his "relatively undereducated and mentally impaired" status. (R. Doc. 9 at 11). The Plaintiff also argues that his rights at the administrative hearing were not properly explained to him. (R. Doc. 9 at 10). In response, the Commissioner suggests that there is no due process entitlement or policy mandating how and when cross-examination must occur, and, even if the ALJ erred, Plaintiff has not establish any resulting prejudice by way of different outcome. (R. Doc. 9 at 10-11).

Plaintiff's third argument is that substantial evidence does not support the ALJ's RFC assessment. (R. Doc. 9 at 12). In support of this argument, Plaintiff contends that his purported "moderate" limitations in social functioning and concentration, persistence, and/or pace were not incorporated into the ALJ's RFC assessment such that substantial evidence does not support the ALJ's assessment. (R. Doc. 9 at 12-13). The Commissioner responds that Plaintiff improperly equates the Step 2 and 3 findings with the RFC assessment. (R. Doc. 11 at 12). The Commissioner also suggests that Plaintiff has not shown that he is unable to sustain work due to mental problems notwithstanding alcohol abuse. (R. Doc. 11 at 13).

Next, Plaintiff argues that the ALJ failed to follow SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017), when he assessed Plaintiff's credibility with regard to his symptoms. (R. Doc. 9 at 17-18). Plaintiff also suggests that substantial evidence does not support a causal link between Plaintiff's alcohol abuse and his mental limitations or physical conditions. (R. Doc. 9 at 16-17). The Commissioner argues that SSR 16-3p was not in effect at the time of the ALJ's decision and is not retroactive such that it has no application to the issues herein. (R. Doc. 11 at 14).

### A.       Materiality of Plaintiff's Alcohol Abuse

42 U.S.C. § 423(d)(2)(C) provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." In evaluating cases involving drug addiction and alcoholism (DAA), SSR 13-2p, 2013 WL 621536 (Feb. 20, 2013), provides detailed guidance on the policies and procedures the Commissioner should employ in rendering his decision. SSR 13-2p, in pertinent part, requires that an ALJ "[a]s in all DAA materiality determinations, apply the appropriate sequential evaluation process twice. First, apply the sequential evaluation process to show how the claimant is disabled. Then, apply the sequential evaluation process a second time to document materiality and deny the claim." The ALJ's decision follows this procedure. First, the ALJ applied the sequential evaluation process in light of Plaintiff's substance abuse, concluding that there are no jobs that exist in significant numbers in the national economy that he can perform. (Tr. 16-27). Next, the ALJ applied the sequential evaluation process a second time, this time removing the substance abuse from the equation, ultimately concluding that Plaintiff's substance abuse disorder is a material factor to the determination of his disability. (Tr. 27-31).

While Plaintiff characterizes his argument as one of materiality, the substance of his argument contains elements of both severity *and* materiality.[2] That is to say, Plaintiff challenges the ALJ's finding that (1) the evidence supports a finding of substance abuse as a severe impairment, and (2) Plaintiff's substance abuse is a material, contributing factor to Plaintiff's disability, without which Plaintiff would not be disabled. The determination of whether an impairment is severe is a question addressed at Step 2 of the sequential evaluation process. *See Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000) ("The second step in the evaluation process is a determination as to whether the claimant has an impairment or combination of impairments which is 'severe.'"). On the other hand, substance abuse is deemed material "if the claimant would not meet [the Administration's] definition of disability if he or she were not using drugs or alcohol." SSR 13-2p, 2013 WL 651536 at *3 (Feb. 20, 2013). Both will be addressed in turn.

### 1. Existence and Severity of Alcohol Abuse

SSR 13-2p, 2013 WL 621536 at *10 (Feb. 20, 2013), guides the Administration in determining the existence of DAA, stating the following:

> i. As for any medically determinable impairment, we must have objective medical evidence—that is, signs, symptoms, and laboratory findings—from an acceptable medical source that supports a finding that a claimant has DAA. This requirement can be satisfied when there are no overt physical signs or laboratory findings with clinical findings reported by a psychiatrist, psychologist, or other appropriate acceptable medical source based on examination of the claimant. The acceptable medical source may also consider any records or other information (for example, from a third party) he or she has available, but we must still have the source's own clinical or laboratory findings.
>
> ii. Evidence that shows only that the claimant uses drugs or alcohol does not in itself establish the existence of a medically determinable Substance Use Disorder. The following are examples of evidence that by itself does not establish DAA:
>
> > • Self-reported drug or alcohol use.

---

[2] Plaintiff argues that the ALJ erred in finding that he has a medically determinable substance abuse disorder, stating that "there is little, if any, evidentiary support for the 'severe' nature of and materiality of said DAA." (R. Doc. 9 at 6).

        • An arrest for "driving under the influence".
        • A third-party report.

> Although these examples may suggest that a claimant has DAA—and may suggest
> the need to develop medical evidence about DAA—they are not objective medical
> evidence provided by an acceptable medical source. In addition, even when we
> have objective medical evidence, we must also have evidence that establishes a
> maladaptive pattern of substance use and the other requirements for diagnosis of a
> Substance Use Disorder(s) in the DSM. This evidence must come from an
> acceptable medical source.

Particularly pertinent to the analysis herein is the Administration's statement that the requirement "can be satisfied when there are no overt physical signs or laboratory findings with clinical findings reported by a psychiatrist, psychologist, or other appropriate acceptable medical source based on examination of the claimant." SSR 13-2p, 2013 WL 621536 (Feb. 20, 2013), at *10. Additionally, the question is not whether the Court would find the existence of DAA, but whether substantial evidence supports the ALJ's conclusion of the existence of DAA.

The ALJ herein concluded that Plaintiff's alcohol abuse was severe. (Tr. 16). Though the ALJ provides little guidance as to the basis for this finding, procedural perfection is not required, and so long as substantial evidence in the record supports this finding and the Plaintiff's rights have not been affected, it will not be overturned. *See Moore v. Astrue*, 2012 WL 1719183, at *4 (N.D. Tex. May 16, 2012) ("Nevertheless, the harmless error doctrine applies in Social Security disability cases, and procedural perfection is not required as long as the claimant's substantial rights have not been affected by an ALJ's error.").

There are numerous diagnoses of substance abuse in the record from various medical providers. Dr. Jasper recorded Plaintiff's report of having consumed "greater than 5 40-ounce beers while at home" the day before an admission at Baton Rouge General, and "consuming 1 to 2 beers every other day" besides that. (Tr. 385). Plaintiff reported consuming "12-32 cans of beer often" to providers during his two-week inpatient stay in February 2013. (Tr. 471). He was

advised to abstain from both alcohol and illicit drugs. (Tr. 472). At a March 12, 2012 evaluation

with Southeastern Cardiovascular Consultants, the provider recorded Plaintiff's report of

drinking alcohol "on a regular basis" and diagnosed him with alcohol abuse. (Tr. 357, 358). Also

on March 12, 2012, Plaintiff was diagnosed with alcohol abuse, and the provider "instructed the

patient and discussed with him the need to abstain from all alcoholic beverages at this time." (Tr.

354). In a May 2012 psychiatric evaluation at Earl K. Long Memorial Hospital, the provider

diagnosed Plaintiff with alcohol abuse. (Tr. 436). The notes state that Plaintiff reported he "got

upset about something- me and my fiancé got into it- I decided I would drink a little – next thing

I know- I am over here," suggesting that the impetus for the hospital visit and mental health

evaluation was, at least in large part, intoxication. (Tr. 435). The ER records from that visit

suggest his alcohol levels upon admission were .207%. (Tr. 439).

There is also evidence of Plaintiff's alcohol abuse and repeated suggestions for Plaintiff

to seek treatment. In May of 2013, VA Records suggest that "alcohol use is likely reducing

effectiveness of medications when he takes them." (Tr. 542). Dr. Foreman reported a

conversation with Plaintiff wherein she discussed finding AA meetings. (Tr. 544). VA Records

also record that Plaintiff "says he has been drinking to excess recently 'to try to get some rest,'"

has had "some counseling for his drinking in the past," and upon being advised "not to drink at

all," Plaintiff said "this will be difficult from him." (Tr. 545). In March of 2014, Plaintiff

underwent a PTSD evaluation at the VA clinic. The psychologist noted that Plaintiff "reported a

history of alcohol abuse and treatment," and it was recommended that he complete an inpatient

substance abuse treatment program but refused because he was "unable to take that much time

off from school" (Tr. 641). He also reported that he "continues to consume alcohol daily," but

also that he "does not view his ongoing use of alcohol as problematic at this time, however,

stated he would like to try to stop drinking in an effort to prolong his life." (Tr. 641). VA Records indicate that, on August 13, 2014, Plaintiff reported that he "drinks over a 1 pint of liquor + 24 beers 2x/week." (Tr. 686). In December 2014, Plaintiff was administered an alcohol use screening test wherein he reported that when he was drinking he would consume 10 or more alcohol-containing drinks in a day. (Tr. 673). He reported "drinking heavily until he stopped about 1 mo ago" and stated he wanted to "talk to dr. reinwald about rehab." (Tr. 672). The alcohol screen concluded that Plaintiff "drinks above recommended alcohol limits" and that psychiatric disorders and depression were medical problems associated with alcohol use, and were reviewed with Plaintiff. (Tr. 673). Despite reporting in December 2014 that he had abstained from alcohol for the previous month, in a January 2015 visit, the VA records suggest that Plaintiff had remained "abstinent until 7/22/2014." (Tr. 662). At that visit, Plaintiff was "encouraged to begin outpatient substance abuse treatment at BROPC," "encouraged to refrain from the use of illicit substances and/or ETOH," and "encouraged to attend daily AA meetings and acquire a sponsor." (Tr. 663).

Given the above review, the Court finds substantial evidence in the record exists supporting the ALJ's conclusion that Plaintiff's alcohol abuse both exists and is a severe impairment. There are numerous diagnoses of alcohol abuse by various providers from 2012 through 2015, accompanied by several reports of excessive alcohol consumption, recommendations for treatment, and advisements to abstain from alcohol.

Plaintiff suggests that the ALJ erred when he relied "exclusively upon plaintiff's self-reports (See ALJ Decision, R. 19, 21)." (R. Doc. 9 at 8) (alterations in original). Self-reporting as to the consumption of alcohol is not the same thing as self-reporting abuse of alcohol or alcoholism. In addition, contrary to Plaintiff's suggestion, the diagnosis of substance abuse is

not a self-diagnosis, but rather a repeated diagnosis by medical providers throughout the record based, in part, on Plaintiff's self-report of alcohol abuse such that substantial evidence supports the ALJ's finding of a diagnosed substance abuse problem. In short, Plaintiff is repeatedly diagnosed with alcohol abuse throughout the record. (Tr. 354, 356, 358, 385, 436, 439, 605, 607, 608, 609, 610, 612, 613, 614, 615, 616, 617, 618, 619, 620-625, 641, 662, 706). Accordingly, substantial evidence supports the ALJ's finding with regard to the existence of substance abuse.

### 2.      Materiality of Alcohol Abuse

The inquiry then moves to the question of whether substantial evidence supports the ALJ's finding of the materiality of Plaintiff's substance abuse. A claimant is not eligible for benefits if alcohol abuse is a contributing factor material to a determination of disability. *See* 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535. Thus, if "there were jobs that Plaintiff could have performed during the relevant time period if he had not abused alcohol, his alcoholism would be material to the disability determination, and he would not have been eligible for benefits." *Halterman ex rel. Halterman v. Colvin*, 544 Fed. App'x 358, 360 (5th Cir. 2013). The claimant bears the burden of proving that alcohol addiction is not a contributing factor to his disability. *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999); *Wheat v. Barnhart*, 318 F. Supp. 2d 358, 362 (M.D. La. 2004).

After concluding, based on all of Plaintiff's impairments including substance abuse, there were no jobs that exist in significant numbers in the national economy that he could perform, the ALJ then moved to a second iteration of the five step process without consideration of Plaintiff's substance abuse. First, the ALJ found that Plaintiff would continue to have coronary artery disease and major depressive disorder in the absence of substance abuse, but that none of his impairments or combination of impairments would meet or medically equal a listing, findings

not contested by either party. (Tr. 27). Then, the ALJ concluded that, without alcohol abuse, Plaintiff would retain the RFC to perform light work, except he could only occasionally interact with the general public, coworkers, and supervisors, and the work must be low stress. (Tr. 28).

Materiality arises in the context of the ALJ's analysis of Plaintiff's RFC. Including Plaintiff's substance abuse, the ALJ found that Plaintiff maintained the RFC to do light work, except that he would never be able to interact with the general public, coworkers, and supervisors, and he may perform only low-stress work (no production-based, quota driven work activity). (Tr. 18-26). Without substance abuse, the ALJ found that Plaintiff retained the RFC to do light work, except that he could *occasionally* interact with the general public, coworkers, and supervisors, and the work must still be low stress (no production-based, quota driven work activity). (Tr. 28-30). In drawing these conclusions, the ALJ found that Plaintiff's impairments could reasonably be expected to produce his symptoms, but that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC. (Tr. 29).

As it is Plaintiff's burden of proving that he would be disabled even without substance abuse, it necessarily follows that Plaintiff must present evidence that he would still be disabled without substance abuse. That is to say, rather than establishing an error as to the existence or severity of alcohol abuse, a "[c]laimant bears the burden of proving that alcohol addiction is not a contributing factor to his disability." *Halterman*, 544 Fed. App'x at 360 n. 4. Here, however, Plaintiff argues that the ALJ erred in finding substance abuse to be a medically determinable impairment, and that Plaintiff's substance abuse does not rise to the level of a severe impairment. These arguments have been rejected, *supra*, as the Court finds that substantial evidence supports the ALJ's findings as to the existence and severity of substance abuse.

Plaintiff does not provide evidence that he would continue to be disabled without the substance abuse, thereby failing to meet his burden. Further, there are various examples in the objective medical evidence of his alcohol abuse contributing to his symptoms. For example, Plaintiff reported to Earl K. Long in May 2012, and stated that the reason for coming was because he "decided [he] would drink a little," and the next thing he knew, he was at the hospital. (Tr. 435). Plaintiff was complaining of psychiatric symptoms. He was cleared medically and reported as having "improved capacity to modulate affective symptoms; not depressed." (Tr. 435). VA Records from May of 2013 explicitly suggest that "alcohol use is likely reducing effectiveness of medications when he takes them." (Tr. 542). It should also be noted that during hospitalization, Plaintiff did participate in group therapy, did not appear distracted, and was noted to spend several hours interacting with other patients. (Tr. 557, 565-68). He was also reported to be cooperative with peers and staff. (Tr. 556).

Plaintiff seems to argue that since his "other mental issues" purportedly pre-dated his substance abuse, his substance abuse is therefore, not material. (R. Doc. 9 at 9). The records from his February 2013 inpatient stay at the Alexandria VA Medical Clinic reflect a diagnosis of major depression "recurrent since 1992." (Tr. 485). But, Plaintiff alleges disability beginning March 1, 2012, and the earliest references to alcohol abuse in the record are from the March 12-13, 2012 stay at Baton Rouge General when his stent was placed. (Tr. 354). If anything, these facts from the objective medical records suggest Plaintiff was able to work from 1992 through March of 2012 despite the presence of major depression, and that the additional substance abuse noted beginning in March of 2012 may have affected those abilities. Plaintiff provides no evidence suggesting a contrary conclusion.

Additionally, the ALJ brought in a medical expert at the administrative hearing, Dr. Rick Adams, to testify as to Plaintiff's impairments, including alcohol abuse. Dr. Adams testified that that Plaintiff's alcohol abuse "is certainly relevant" along with Plaintiff's "major depressive disorder," notwithstanding psychotic features that Dr. Adams concluded were not clearly established in the record. (Tr. 51). When asked whether the limitations Dr. Adams assigned were with or without substance abuse, he replied that Plaintiff did have "some ongoing problems with depression" without substance abuse, but that "it would be more marked impairments" with substance abuse. (Tr. 54). That is to say, Dr. Adams concluded that Plaintiff's substance abuse had a least some effect on the severity of Plaintiff's impairments. The testimony of Dr. Adams likewise provides substantial evidence to support the ALJ's decision.

### B. Plaintiff's Opportunity to Cross Examine Medical Expert

The Fifth Circuit has recognized the statutory right of a claimant to representation at an administrative hearing. *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir. 1981) ("The Supreme Court has not recognized a Constitutional right to counsel at a Social Security hearing… Nevertheless, a claimant has a statutory right to counsel at such a hearing.") (internal citations omitted). A claimant is entitled to receive adequate notice of his right to counsel at an administrative hearing. *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003). A claimant may also waive his right to counsel at the administrative hearing. *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

Plaintiff contends that he was not properly afforded the opportunity to question the medical expert, Dr. Rick Adams. In support of this argument, Plaintiff suggests that the ALJ's "attempt" to give him the opportunity to question Dr. Adams was insufficient, in part because Plaintiff was not represented at the hearing, and he "may have been 'educationally challenged.'"

(R. Doc. 9 at 11). The Commissioner responds that, while claimants must have an opportunity to cross-examine a witness, there is no "due process entitlement or policy that mandates how and when cross-examinations must occur." (R. Doc. 11 at 10) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)).

First, Plaintiff's representations regarding the information provided to him at the administrative hearing are not entirely accurate. Plaintiff suggests that the only information regarding cross-examination of Dr. Adams he was given was at the moment the ALJ completed his questioning of Dr. Adams, then asked Plaintiff, "Do you want to ask any questions about any of that, sir?" (Tr. 53). Plaintiff responded, "I don't know -- I don't know what. I don't even really know how to even." (Tr. 53). At the outset of the hearing, however, the ALJ explained the entire process to Plaintiff, who is high school educated, including stating the following:

> So, the way it's going to work will be very similar to before. I'm going to swear you in as a witness. I'm just going to ask you a few questions, since we've got a full record here, and then I'm going to call Dr. Adams, and I'm going to swear him in as a witness, and then ask him a bunch of questions. You can ask him some if you choose to, and I can help you with that.

(Tr. 41).

The ALJ also discussed Plaintiff's choice to represent himself at the hearing, wherein the following exchange occurred:

> ALJ: All right. Now, you weren't represented at your first time around, when you had your hearing before Judge Grant. You weren't represented when you appealed the case. All those times you were provided a written notification, as well as oral notification, of your right to representation.
>
> Since the case was remanded, we've sent you even more information about it now. Six or seven times. Am I correct that you know that you have this right?
>
> CLMT: Yes, sir.

| ALJ: | And do you wish to go ahead today without representation or do you want – |
|------|------|
| CLMT: | Yes, sir. |
| ALJ: | -- more time? Sorry? |
| CLMT: | Going on. |

(Tr. 41-42). Plaintiff was also orally advised of his right to representation at the first

administrative hearing held on May 15, 2013, wherein the following exchange occurred:

| ALJ: | Mr. Thomas, you do not have a lawyer with you today, is that correct? |
|------|------|
| CLMT: | Sir? |
| ALJ: | You do not have a lawyer with you today, sir? |
| CLMT: | No, I do not. |
| ALJ: | Okay. Great. Because you don't have a lawyer with you, there's a couple things I have to go over. One, I need to make sure you understand that you have a right to have a lawyer here with you, if you want one. |
| | Two, they want me to explain to you how attorneys are paid. In most Social Security cases, they don't require any money up front. They just take a percentage of what they require for you. So, if you think you can't afford an attorney, you probably still could get one, if you wanted to. |
| | And third, if you'd like some additional time, I can reschedule your hearing and give you a chance to look for a lawyer, if that's something that you want to do. |
| | So, having heard those three things, do you want to go forward with your case today? |
| CLMT: | Yes, sir. |
| ALJ: | Or do you need some time? |
| CLMT: | No. I want to proceed today. |

(Tr. 62-63). In addition to oral confirmations of his waiver of right to representation, on May 15, 2013, Plaintiff executed a Wavier of Representation by the Claimant form wherein he acknowledged that he understood his right to representation at the hearing, voluntarily waived his right to representation, and requested to proceed without a representative. (Tr. 142).[3]

Based on the above, Plaintiff received at least two oral and numerous written advisements of his right to representation throughout the administrative process, some of which are executed by him, and voluntarily waived the right at each time. Plaintiff was also adequately informed of his right to ask any questions of the witnesses and was given the opportunity to do so. The ALJ did not limit or restrict Plaintiff in any way from doing so. There is no evidence in the record that Plaintiff was not mentally competent, as there is no support for Plaintiff's suggestion that his major depressive disorder rendered him incompetent or mentally impaired.  The Court finds that the ALJ's actions were sufficient.

### C.     ALJ's RFC Assessment

Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184 (July 2, 1996).

Plaintiff argues that the ALJ committed "error on its face" by not addressing the "sustainability of his potential work-related activities." (R. Doc. 9 at 12). In support of this

---

[3] Plaintiff further acknowledged that he received a list of organizations prior to receiving the Notice of Hearings. (Tr. 142). Included in the information Plaintiff acknowledged receiving is a document entitled "Important Notice About Representation," which describes a claimant's right to have an attorney or other person represent him, and that any fee charged must be approved through the administration. (Tr. 155). The representation notice also provides a list of two organizations that could provide him with contact information of attorneys experience in Social Security hearings, and twenty organizations that could assist him with free legal help. (Tr. 155-157). The same written Waiver of Representation by the Claimant was executed by Plaintiff on April 20, 2015. (Tr. 196). There are several other communications in the record the advising Plaintiff of his right to representation. (Tr. 117, 119, 120-21, 123-26, 129, 134-35, 150, 153-57, 160, 165-66, 178, 184-85).

contention, Plaintiff suggests that the ALJ failed to incorporate all of his mental limitations, and in particular, failed to explain an alleged conflict between the opinion of Dr. Adams and the ALJ's ultimate RFC. (R. Doc. 9 at 12-13). Plaintiff also argues that the ALJ failed to address the issue of concentration, persistence, and pace in his RFC assessment. (R. Doc. 9 at 13). The Commissioner responds that an assessment of "concentration, persistence, and pace" are processes at steps 2 and 3, not part of the RFC assessment, and that a finding by the ALJ that Plaintiff can obtain and maintain other work is inherent in the ALJ's RFC assessment. (R. Doc. 11 at 12-13).

The ALJ found that, if he stopped the substance abuse, Plaintiff would retain the Residual Functional Capacity to perform light work, except that he could occasionally interact with the general public, coworkers, and supervisors, and that the work must be low stress (i.e., not subject to production based, quota-driven work activity). (Tr. 28). In so finding, the ALJ dedicated nine pages of his decision to summarizing the medical records and Plaintiff's testimony, including the records and testimony relevant to Plaintiff's mental status and abilities. (Tr. 19-25; 28-30).

The Plaintiff states that his "key point is that, neither low stress work nor having the capacity to occasionally interact, with the general public, co-workers, and supervisors addresses the issue of concentration, persistence and pace. Thus, any analysis based upon this 'flawed' and/or incomplete mental RFC is, likewise, flawed and, therefore, not based upon substantial evidence." (R. Doc. 9 at 13). To the extent that Plaintiff argues that the ALJ failed to account for his limitations in "concentration, persistence or pace" in his RFC finding, that argument is without merit as those criteria are relevant at steps 2 and 3 of the sequential evaluation process, not the RFC assessment.

The Court also agrees with the Commissioner's assertion that "a finding that Plaintiff can not only obtain but maintain other work is inherent in the ALJ's RFC assessment" as that assertion is supported by the regulations as well as the jurisprudence. (R. Doc. 11 at 13). For example, in *Morton v. Soc. Sec. Admin.*, 2016 WL 5724810, at *4 (E.D. La. Sept. 15, 2016), *report and recommendation adopted*, 2016 WL 5678548 (E.D. La. Oct. 3, 2016), the court stated the following:

> The regulations provide that a finding that plaintiff can perform work on a regular and continuing basis is inherent in an RFC assessment. 20 C.F.R. §§ 404.1545(b) & 416.945(b). The regulations provide that to determine an individual's RFC, the ALJ will assess the nature and extent of the individual's limitations and will determine the claimant's RFC for work activity "on a regular and continuing basis." 20 C.F.R. §§ 404.1545(b)-(c) & 416.945(b)-(c). Social Security Ruling ("SSR") 96-8p emphasizes that the RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a "regular and continuing basis." A regular and continuing basis means "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p; *see also, e.g.,* SSR 86-8, "Titles II and XVI: The Sequential Evaluation Process" (stating that an RFC "must be defined in terms of the claimant's ability to function in a work setting"; evaluation of physical abilities indicates "maximum RFC for sustained activity on a regular basis."). Consequently, an RFC assessment is a finding that a claimant can sustain work activity at the determined level. Thus, for the reasons outlined below and for the lack of record evidence, the Court finds that plaintiff has failed to demonstrate that substantial evidence does not support the ALJ's RFC finding, and that implicit in that finding is the determination that plaintiff can maintain and sustain work at that level.

There is no evidence in the record that Plaintiff had or would have difficulty in sustaining or maintaining mental activities in a work setting on a regular and continuing basis. Therefore, the general rule set forth above—that a finding that a claimant is able to maintain a particular RFC inherently includes that claimant's ability to sustain work at that level—applies.

Indeed, as the ALJ points out, the record contains several findings that Plaintiff had no difficulty with these areas, many of which are cited by the ALJ in his decision. For example, in the August 16, 2012 consultative examination, Dr. James Van Hook reported that Plaintiff

"showed to possess an adequate level of social judgment… [his thinking] was intact, logical and coherent… He indicated orientation to person, place, time, and situation… Short-term memory was intact… Intermediate memory was intact… Long-term memory was intact for recent recall… Persistence was observed to be adequate. He answered all questions and showed adequate effort. He was observed to interact and relate adequately during the courts of this examination." (Tr. 452). Dr. Van Hook went on to conclude that Plaintiff's ability to understand, remember and carry out instructions was intact, his ability to maintain attention and concentration for performance of simple, repetitive tasks, respond appropriately to supervision, and interact appropriately with others was adequate, he had an adequate level of social judgment and understanding of the general principles related to social situations, and that his ability to sustain effort and persist at a normal pace was only marginally impaired, along with a mild impairment in stress tolerance. (Tr. 453). The ALJ called on a psychologist to testify at the administrative hearing, Dr. Rick Adams. (Tr. 50-54). After reviewing the medical records, Dr. Adams acknowledged that Plaintiff had been diagnosed with generalized anxiety disorder, and depressive disorder not otherwise specified by Dr. Van Hook in August 2012. (Tr. 50). Despite these diagnoses, Dr. Adams testified that "there's been no cognitive limitations noted in the mental status exams" although he "would appear to have some difficulty handling stress." (Tr. 52). Dr. Adams also testified that he did not see any limitations with respect to understanding, remembering and carrying out instructions or details in the record on the mental status exam. (Tr. 53). There is no indication of any significant inability to sustain work related activities.

Additionally, in *Dunbar v. Barnhart*, 330 F.3d 670 (5th Cir. 2003), the court found that "an explicit finding in every case that the claimant can not only engage in substantial gainful activity but maintain that employment" is not required under Fifth Circuit precedent. *Dunbar*,

330 F.3d at 672 (citing *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002)). In *Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003), the Fifth Circuit rejected the idea that an ALJ "must in every case articulate separate and distinct findings that the applicant can perform the incidents of the job *and* that he can maintain the job over a sustained period, even if the applicant does not contend that his situation resembles Singletary's." As noted by the *Dunbar* court, "absent evidence that a claimant's ability to maintain employment would be compromised despite his ability to perform employment as an initial matter, or an indication that the ALJ did not appreciate that an ability to perform work on a regular and continuing basis is inherent in the definition of RFC, we do not read *Watson* to require a specific finding that the claimant can maintain employment." *Dunbar*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Frank v. Barnhart*, 326 F.3d at 619).

Consistent with the law set forth above, Dr. Van Hook concluded in his consultative examination that Plaintiff's "ability to sustain effort and persist at a normal pace over the course of a routine 40-hour workweek is believed to be marginally impaired." (Tr. 453). At the administrative hearing, Dr. Adams testified that "there's been no cognitive limitations noted in the mental status exams" and that Plaintiff "would appear to have some difficulty handling stress" when questioned about whether Plaintiff would meet or equal a Listing. (Tr. 52). The ALJ then immediately translated this line of questioning into "limitations or restrictions" for purposes of assessing Plaintiff's RFC, and Dr. Adams testified that Plaintiff "may fair best with limited or occasional contact with the general public and coworkers and supervisors, in a lower stress work situation." (Tr. 52). The ALJ gave the opinion of Dr. Adams "great weight." (Tr. 26).

Thus, Plaintiff's suggestion of a "conflict between the ALJ and Dr. Adams that was never resolved" as it pertains to his level of concentration, persistence, or pace is without merit as is his

assertion that the ALJ failed to account for his limitations in concentration, persistence, or pace in his RFC. Plaintiff bases this argument on his contention that "neither low stress work nor having the capacity to occasionally interact, with the general public, co-workers, and supervisors addresses the issue of concentration, persistence and pace." (R. Doc. 9 at 13). This reliance is misplaced, however, as the Fifth Circuit has concluded otherwise. Most notably, in *Bordelon v. Astrue*, 281 Fed. App'x 418, 423 (5th Cir. 2008), the Fifth Circuit concluded that "[s]uch restrictions to rare public interaction, low stress, and simple, one- to two-step instructions reflect that the ALJ reasonably incorporated Bordelon's moderate concentration, persistence, and pace limitations such that the hypothetical question was proper." Though the current issue before the Court is not whether the hypothetical posed by the ALJ to the vocational expert was proper, the principle that a restriction of "rare public interaction, low stress, and simple, one- to two-step instructions" sufficiently incorporates at least a moderate limitation in concentration, persistence, and pace is applicable to the facts herein.

The ALJ found that Plaintiff had, at most, moderate limitations in social functioning, and concentration, persistence, and pace. (Tr. 18). Without alcohol abuse, the found that Plaintiff had mild difficulties in social functioning, and moderate difficulties with regard to concentration, persistence, and pace. (Tr. 27). Translated to the RFC and including the substance abuse, the ALJ concluded that Plaintiff retained the ability to perform light work, except he could never interact with the general public, coworkers, and supervisors, and could only perform low-stress work. (Tr. 18). Without the alcohol abuse, the ALJ made the same findings except that he could now occasionally interact with the general public, coworkers, and supervisors. (Tr. 28). Though not directly at issue here, the ALJ's questioning to the vocational expert at the administrative hearing reflected the RFC assessed by the ALJ. The ALJ submitted to the vocational expert a

hypothetical individual that "can engage in what is defined as light exertion, and can occasionally interact with coworkers, supervisors and the general public. And must work in a low stress environment, which is defined and meant to mean with no production based quotas." (Tr. 55). This is significant insofar as the ALJ relied on the vocational expert's testimony that a hypothetical individual with these limitations could not perform Plaintiff's past work, but that there would be jobs in significant numbers in the national economy that hypothetical individual could perform. (Tr. 56).

Lastly, the Court notes that Plaintiff points to no information in the record that would substantiate his suggestion that he is unable to sustain or maintain employment, thereby failing to meet his burden through Step 4 of the sequential evaluation process. The Court finds, based on the foregoing, that the ALJ properly accounted for the Plaintiff's limitations in social functioning, and concentration, persistence, and pace in his RFC findings limiting Plaintiff to low-stress work, and only occasional interaction with the general public, coworkers, and supervisors, and Plaintiff's argument to the contrary is without merit.[4]

### D. ALJ's Credibility Assessment

Plaintiff's final argument is characterized as an error by the ALJ in evaluating the Plaintiff's subjective complaints and credibility finding. (R. Doc. 9 at 13). In support of this argument, Plaintiff suggests that the ALJ relied on the testimony of Dr. Adams, which are "mischaracterizations and do not provide the substantial evidence necessary to reject claimant's statement regarding his symptoms." (R. Doc. 9 at 14). Plaintiff contends that the ALJ failed to follow the mandates of SSR 16-3p and SSR 85-16, failed to provide consideration "to the

---

[4] Because the Court found above that the ALJ's finding that Plaintiff's substance abuse was a material element was supported by substantial evidence, the Court does not address whether the ALJ's initial RFC including the substance abuse, limiting Plaintiff to no interaction with the general public, coworkers, and supervisors, properly accounts for Plaintiff's limitations with regard to concentration, persistence, or pace.

plaintiff's seeking and, ultimately, obtaining medical assistance," or "to the etiology and frequency of his symptoms (alcohol use)." (R. Doc. 9 at 18).[5] The Commissioner's response is limited to the contention that the ALJ properly followed SSR 96-7p because SSR 16-3p was not in effect at the time of the ALJ's decision. (R. Doc. 11 at 13-14).

The Supreme Court has held that administrative rules do not apply retroactively. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 298 (1988). SSR 16-3p, 2016 WL 1020935 (Mar. 16, 2016), was enacted on March 9, 2016 with an express effective date of March 16, 2016, and explicitly superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). Courts have noted that SSR 16-3p "was designed to clarify rather than change existing law." *Ruiz v. Berryhill*, 2017 WL 3432727, at *15 (S.D. Tex. Aug. 9, 2017). Further, several district courts have determined that SSR 16-3p does not apply retroactively. *See Shuler v. Berryhill*, 2017 WL 4298132, at *10 (N.D. Tex. Sept. 28, 2017) (collecting cases). Any argument that the ALJ failed to apply the mandates of SSR 16-3p is, therefore, without merit.

Plaintiff next argues that "the ALJ evaluated/compared plaintiff's statements regarding his symptoms to his RFC, when, in fact, said RFC was supposed to have been comprised of plaintiff's symptoms." (R. Doc. 9 at 17). Plaintiff's suggestion here seems to be that, rather than evaluating Plaintiff's report of symptoms in the record and during the administrative hearing, those reports are necessarily to be part of the actual, final RFC, without regard to any contrary objective medical evidence, or findings as to the credibility of Plaintiff in describing the extent of his symptoms. This is simply not so, and nowhere in SSR 85-16 is the ALJ required to blindly accept a claimant's statements regarding his symptoms and translate those directly—and without

[5] To the extent Plaintiff also seems to argue in this section that error was committed in the ALJ's assessment of the Plaintiff's alcohol abuse (*see* R. Doc. 9 at 15-16), that argument has been addressed in Section A, *supra*.

scrutiny—into his RFC assessment. In fact, SSR 96-7p specifically directs the ALJ to make

findings regarding the credibility of Plaintiff's reports, stating the following, in pertinent part:

> 2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.
>
> *****
>
> 4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Because Plaintiff's argument is erroneous as

a matter of law, an inquiry into whether substantial evidence supports the ALJ's assessment of

Plaintiff's report of his systems is unnecessary. Plaintiff's appeal on this ground is denied.

### E.      Plaintiff's Eye Disorder

Plaintiff makes passing reference to the ALJ's exclusion of his eye disorder from the

ALJ's findings of severe impairments, but provides no supporting argument or authorities. (R.

Doc. 9 at 3). The ALJ concluded, at Step 2 that Plaintiff has a medically determinable eye

disorder "which appears to be related to previously untreated hypertension." (Tr. 16).

Notwithstanding the existence of a medically determinable eye disorder, the ALJ went on to find

it non-severe, stating, "there is insufficient evidence of any ongoing functional limitations as a

result." (Tr. 16-17).

"At step two, the claimant bears the burden of showing that she has a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities." *Cagle v. Colvin*, 2013 WL 2105473, at *5 (S.D. Tex. May 14, 2013). There is little doubt from the record that Plaintiff was diagnosed and treated for an eye disorder. What is, however, notably absent from the record is any indication of ongoing functional limitations as a result of Plaintiff's eye disorder, a necessary component of the inquiry and Plaintiff's burden. Accordingly, the Court does not conclude that the ALJ's step 2 finding of the non-severity of Plaintiff's eye disorder was in error. Further, while the Court notes that, generally speaking, when an ALJ finds an impairment non-severe, he must still "consider the limiting effects of all [a claimant's] impairment(s), even those that are not severe, in determining [RFC]," because Plaintiff points to no evidence of any limiting functional effects of his eye disorder, and the Court finds none in the record, the ALJ also did not err in his RFC analysis as it pertains to Plaintiff's eye disorder. Therefore, to the extent Plaintiff argues the ALJ committed error either at Step 2 or in his RFC analysis for failure to consider his eye disorder severe or the functional limitations of his eye disorder, that argument is without merit.

## V.  CONCLUSION

For the reasons given above, **IT IS ORDERED** that the Commissioner's decision be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on February 28, 2018.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**